Good morning everyone and welcome to the Ninth Circuit. We have three cases that have been submitted today. Those are Singh v. Garland, Parman v. O'Malley, and Hartsong v. O'Malley. Our first case for argument this morning is Santos Ramos v. Garland, 15 minutes per side. You can approach the podium when you are ready and let me know whether you would like any time for rebuttal. Good morning Your Honors, may it please the Court. My name is Charis Vinson, I am appearing on behalf of the petitioners Ms. Maritza Santos Ramos and her son Carlos Ivan Ramos Santos. We are here today because of the Board's failure to apply the proper standard of review in this case. We ask that the Court reinstate the immigration judge's grant of protection under the Convention Against Torture or at a minimum remand to the Board to apply the proper standard. The issues before the Court today are whether the Board actually applied the clear error standard of review that they claimed to apply and whether under that clear error standard of review the judge's decision was correct. I have a question for you about the relief requested because in the opening brief you asked suggested we could give direct relief and basically grant the petition and then you seemed to backtrack slightly in the reply and suggest that it should be remanded. Is there authority for us to grant directly? Okay, where the Board has failed to, let me find the exact phrasing, where the Board has fully considered the claim and erroneously denied relief, this Court can grant relief. But wouldn't we only do that if the record just really compelled the conclusion that your client was entitled to relief? If it doesn't, I think the proper remedy would be remand, wouldn't it? Well, we argue that the record does compel the grant of relief that the judge granted and that his decision was proper. So the immigration judge made a series of factual findings, including that Ms. Santos was previously extorted, that she was unable to pay the extortion, that her aunt similarly was extorted and unable to pay and was then killed as a result, that her brother was extorted and kidnapped, that she received death threats to herself and her son and that that's when she fled. And the judge found that all of this, Ms. Santos' personal experience was supported by the country conditions evidence that demonstrates that a large portion of people in El Salvador, particularly business owners and people in the small, in the informal sector, business sector like Ms. Santos are extorted, something like 70 percent of small business owners in El Salvador. So let me just clarify. Your argument is that because the BIA reweighed the evidence, that in and of itself compels granting CAT relief such that we would grant direct relief as opposed to remand? Because I think what you're arguing right now is inconsistent with the response that you provided Judge Thomas and Judge McCune a few moments ago, which is you're, you're acknowledging that really the only thing that happened is that the BIA reweighed the evidence, not that it's, it is, that the record is clear that, that relief should be granted. The evidence didn't change. Right. The evidence has not changed. The board reviewed the same evidence that the judge reviewed and the board just had a different analysis, which is not clear error, standard of review, non-clear error, standard of review. If two reasonable adjudicators can come to different decisions, that's not clear error. For clear error, the decision, the factual findings have to be illogical. The judge's findings have to have been illogical, implausible, or unsupported by the record, and that's not the situation here. And because the board essentially created their own, not created their own facts, although there is one point where they did assume facts that are not in, in the record regarding the, whether Ms. Santos' family has been harmed or not, Ms. Santos had testified regarding the additional contact that her family received after she left the United States and shortly before her final hearing, and the board took that fact that her brother-in-law and her mother had received additional contacts from the gangs and assumed that that meant that they were unharmed, but there was no testimony or evidence in the record regarding whether there had been any harm to the family, and that's therefore not a fact that the board can rely on in any way. The, the judge found that Ms. Santos would be again extorted if she returned to El Salvador, and that finding, again, the judge based on her experience and the country conditions evidence. He found that the extortions would continue to raise in amount as happened in the past with her, and again, as supported by the country conditions record, and the judge found that as a result, she would be harmed and even killed in El Salvador. Those are factual findings. What can happen in the future is a predictive factual finding that the judge is allowed to make. It's not simply speculation as the government and the board suggest. It's based on Ms. Santos' testimony, her personal experience, and the relevant, the country conditions reports, which the judge described as relevant and reliable reports. The judge found that the government would acquiesce in the torture of Ms. Santos, and he based that on this court's decision in Parada v. Santos, which emphasizes that acquiescence cannot be viewed narrowly as willful acceptance, but rather awareness and blindness to the actions of the group or the person who would be torturing Ms. Santos here. The judge explained that the country conditions evidence demonstrates weakness and corruption throughout the Salvadoran government, and that the gangs are pervasive throughout the country of El Salvador. And as the judge stated, it seems like there are policies and laws, but that on the ground, nothing is really, not much is really being done to help people like Ms. Santos. And as this court has found in other cases, for example, Xochihuahuanes, the awareness and willful blindness does not have to be at all levels of the government. It can be a local actor who is being bribed or who is corrupt. It can be at any level of the government to qualify as acquiescence by the state. And the judge also found that Ms. Santos would be unable to escape torture through relocation. He noted that the country of El Salvador is very small, that gangs are pervasive throughout the country, and that there is state complicity with the gangs. And as a result, he found that it would not be reasonable for Ms. Santos to relocate. Relocation is not a deciding factor for relief under the Convention Against Torture. It is one factor that must be considered in determining the possibility of torture in the home country. The board, on the other hand, reviewed the judge's decision and claimed to be reviewing under clear error review. However, the board did not explain why any of the judge's findings were illogical, implausible, or unsupported by the record. First, the board says that Ms. Santos would not be subjected to torture because other members of her family apparently continue to live unharmed. Again, that's assuming facts that were not in evidence. If the board believes that that's a fact that needs to be determined, then the board needs to send it. They matter back before the immigration judge rather than just assuming a fact into existence. The board said that it is not more likely than not that gangs would be aware of Ms. Santos' desire to subject her to torture and dismissed those findings as speculative, but without explaining why the judge's findings, which cited to testimony, cited to the record, were illogical on this question of whether Ms. Santos would again be extorted upon return into El Salvador. Finally, the board dismissed the judge's findings regarding government acquiescence, again using the same facts that the judge weighed in his decision, that there are anti-gang operations, that there is, that the government created a call center, and that Ms. Santos did not actually file a report with the police. These are the same facts that the judge considered, but the judge found that the country conditions evidence demonstrates that there is acquiescence in spite of the government's minimal attempts to control gangs, that on the ground, people like Ms. Santos, who are trying to work to make a living, were not free from torture, and the government would not protect her and would acquiesce in her torture. I have four minutes, but if you, if you don't have further, you can save them for rebuttal if you'd like. Yeah, I will just save them for rebuttal at this point. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court, Lindsay Vick on behalf of the Attorney General. This Court should deny the petition for review for three reasons. First, the Board correctly applied the clearly erroneous standard of review to the IJ's decision, which was based on inferences that outpaced the facts and were not supported by the record. And second, the Board did not engage in any impermissible fact-finding. And finally, substantial evidence supports the Board's denial of cap protection once the IJ's erroneous findings are removed. Well, can you start out by, by talking about this finding that the BIA makes that petitioner's family live in, continue to live in El Salvador unharmed? I didn't see anything like that in the IJ's decision, so for me, that's the strongest fact that suggests that there was not, not an appropriate review here. So I don't view that as an impermissible fact-finding. I believe what the Board was doing there is they were looking at the IJ's findings of fact in light of the record, and so there they were making an observation about what the petitioner had testified about her family members, and one of them being her aunt, who was killed by the gangs. And then she had also mentioned in the same testimony that she had family living in El Salvador. But, but why does the fact that they're living there suggest that they're living there unharmed? Well, I think it would be, it would be reasonable to expect that if they had been harmed that she would have said that. That would be part of her claim because she was already presenting testimony about family members who were harmed. Her aunt was killed. And so she was presenting testimony about that. She presented testimony about her brother who had been kidnapped, I believe. And so it's reasonable to expect that if those family members were also harmed that she would have put forth that testimony. That's fact-finding. That's really, what's the clear error in the IJ's finding? And maybe more specifically to piggyback on Judge McEwen's question, where in the decision in particular did the BIA explain how the IJ's factual findings were illogical, implausible, or not supported by inferences from the evidence? Well, so taking, for example, the likelihood of torture determination. Well, why don't you start with the one we're focused on, which we know is not in the IJ findings, and that has to do with the family continuing to live unharmed, and then go on to the others. Right. And so I agree the sentence about the family being unharmed is an artful and probably not the way the board meant to say it. But in that section overall, the board is looking at the petitioner's testimony about how she was individually extorted. And her experience with her son, they were threatened, there were no reports made to the authorities, no attempt to relocate. And the board looked at these facts in light of matter of JFF, where the board The board need to explain how the IJ's determinations were illogical, implausible, and not supported by the evidence. I mean, what you're talking about, I think, is essentially acknowledging that the board is conducting its own fact-finding. I don't believe so, Your Honor, because what the board is doing here, they cite the burden of proof regulation. And what the board found is that the judge made findings of fact, that the board did not disagree with all of the findings of fact. But what the board disagreed with was the inference that then, because you would have to string together a series of speculative suppositions in order to get from the petitioner being extorted on several occasions to more likely than not being killed by the gangs. And so what the board found was that was an inference that outpaced the facts. We just don't have the facts here that lead to the heightened CAT standard of more likely than not that they will suffer torture when they return to El Salvador. Certainly the evidence could show a potential for future harm, but that does not logically lead to a more likely than not conclusion that they will suffer torture or be killed by the gangs, which is what the judge found. Again, here to Judge Desai's question, I don't see where in the BIA's decision there's an explanation of why the IJ's conclusion are illogical. It seems that the BIA is spending time in this decision making its own factual findings, drawing its own inferences, but that's not what it's supposed to be doing under clear error review. So I guess it would be helpful for me if you could sort of point me to, I don't know, the sentences or the portions of the BIA decision where you think it's, they're actually discussing why the IJ's decision is illogical or implausible. Yes. So if you look at page three of the IJ's decision, the board discusses how the IJ did not clearly err in finding that extortion exists in El Salvador. And then the, on the prior page, on page two of the IJ's decision, the board discussed how the IJ made several predictive findings of fact, that a large portion of people in El Salvador are, suffer extortion, and that respondents would be unable to pay the extortion because they had in the past, and that would likely then result in harm. These are all the predictive findings. Are you suggesting that by using the words, the IJ clearly erred, that is enough to meet the standard to explain why the IJ's findings are implausible? No, no, no. That is, that is not enough. What the board has... When you're, I'm looking at the pages that you're citing us to, and essentially following a conclusory sentence that the IJ clearly erred, there is then, you know, the BIA going through its own analysis and, and finding otherwise, but not explaining anything about its broad conclusion that the IJ clearly erred. Well, I think the, the explanation, and obviously we would all love for the decision to be more fleshed out, but what the, the explanation there is that the board discusses the same facts that the IJ found. The board did not go outside and discuss other facts, aside from that one tricky sentence that maybe we can agree is rather inartful. The board did not find any of its own facts to lead to the conclusion that this case was akin to matter of JFF, and the, and the IJ was essentially making it so that he had to string together these assumptions, that the, the gangs would be aware of petitioners when they arrive. They would more likely than not be aware that petitioners returned to El Salvador, that they would more likely than not be subjected to extortion demands that they could not meet, and then that they would more likely than not be killed as a result. So is it, isn't, is it a problem for the, this BIA decision that the BIA does not discuss what I think is one of the IJ's key findings, which is that gang members approached petitioner's family to, asking for her phone number, went to her parents' house, asking what happened to her, asking what happened to her son. You know, why isn't that not a problem under our precedence, that that's not discussed anywhere in the BIA's decision? Well, I, the, the board is not required to discuss every single finding of fact. The board did discuss the, the key facts, and I think the, the murder of the aunt is one of those key facts. And then, with respect to acquiescence, the board discussed the, the country condition's evidence that the IJ had found compelling, and what the board found. Okay. How does one engage in clear error review if not considering the specific findings of the lower court in which you are conducting clear error review? Well, what the board, the board did, the board did consider the IJ's findings in this case, and the board does discuss them in its decision. Well, I mean, I think that you just acknowledged that the BIA did not address several key findings, and I think your response to Judge Thomas' question is that the BIA is not required to do so. Not required to discuss every single finding is what I, what I meant to say. And I mean, it's a far, we know that there's extortion. There's the UN reports. Eighty percent of the people are extorted. Her aunt is killed. The brother, I guess it is, is what, kidnapped? She has another relative who's kidnapped and extorted. She has this little clothing business. She can't possibly pay the level of extortion she tried, but you can't, then they keep raising the level of extortion. So, you read through the BIA, and they don't really attack what's wrong with the IJ's findings. There's a lot of, you know, court of pablum in there that we see in every decision, which we understand. You know, they list the factors about torture and that sort of thing. But they don't point to anything in the record that suggests, you know, that if she returns, she's not going to be back in the same boat she was when she left. Right. So, what's the clear error in the IJ's decision, other than the BIA has a different view? But that's not clear error. Well, particularly with the acquiescence determination, the board found that the IJ largely relied on general country conditions evidence, establishing that corruption is pervasive through Salvadoran justice system. There is pervasive gang activity. But basically, the judge found that and found that corruption in the government was tantamount to more likely than not that the government would acquiesce in the torture of these particular petitioners. It's important to note that this court has held time and again that petitioners who experience several instances of extortion and threats, and that they maybe know of a family member who's been unfortunately killed by the gangs for failing to pay extortion, that does not logically lead to the conclusion that petitioners would more likely than not suffer torture at the acquiescence at someone turning a blind eye to their torture. Well, under that theory, I don't think anyone from El Salvador who's been extorted could ever get immigration relief. Because the facts are there. We know what the situation is in El Salvador. We know it's deteriorated based on the reports. So what would it take? Well, it would take what CAT requires, which with the acquiescence standard, you need an individualized risk. You need to be able to show that these particular petitioners are at risk of harm or that there is some awareness. And what do you need to show that? They came to my house. They threatened me. They threatened my family. I paid the extortion. I can't pay more extortion. They've got the phone. They came looking for me afterwards. That's pretty particularized. The problem with this is that between being threatened and being killed, the only relief is to flee. And under your theory, what does she need? What would she need to show? Well, in those facts that you just summarized, we don't have any evidence that the government, any local actor is aware of petitioners. We just don't have that. She did not testify that the gangs that threatened her... Is there a requirement that she report? It's not a requirement, but it would be highly probative. But it is a requirement that the government must be involved in some way. And we don't have, other than the general country conditions evidence showing corruption, we don't have any... And acquiescence. We have country conditions on acquiescence, correct? We have country conditions indicating acquiescence, but... So I'm just asking, what do you need to show? You can't get an affidavit from the government. You need to show that the government somehow would acquiesce, turn a blind eye, or know about these petitioners and their torture. I mean, my friend mentioned this court's decision in Parada. Parada did not hold that the country conditions evidence in El Salvador equals acquiescence. It said that it can indicate acquiescence, and then it remanded to the board. So Parada does not stand for the proposition that the country conditions evidence in El Salvador today just equals acquiescence. So there does need to be a showing. And so the board found here that the IJ made a leap. It... He made a leap to corruption equals acquiescence, and that simply outpaced the facts. If this were remanded to the board, wouldn't the board just say the same thing again? Just use the words clear error? I can't speculate about what the board would do, but... The practical matter, or would there be the option to reopen the record? I think typically what this court does on remand is it's sent back for further consideration for the board. Application of the correct standard, or record standard, right? Correct, correct. And so I know your honors were asking about the proper remedy in this case, and it would be to remand to the board for further consideration, proper application of the standard. And there is no authority that I'm aware of for this court to grant outright Convention Against Torture Protection. The case that my friend cited in her briefing, the Babala v. Ashcroft case, it did not stand for the proposition that the court can outright grant relief. What happened there was there was a presumption of fear, finding the government failed to rebut it, I think twice. And the court determined that remanding on that issue was unnecessary, but still the court remanded for the ultimate decision of whether to grant asylum in the exercise of discretion because there it was a discretionary application. Okay, thank you. Unless my colleagues have any further questions, I think we have your position. Okay, thank you, your honors. Thank you. So the question of individualized risk is addressed by the immigration judge. He relied on Ms. Santos' testimony about what happened to her. And she, as your honor pointed out, she was extorted. She was unable to pay. She was threatened. I think the government's argument focused, though, in large part, that all that's true, but there's no foundation on the acquiescence that is particular to her. Would you address that point? Particular to her in that she, as a person, would be extorted again upon return. That she made a report to the police and that the government did not take action. Even if she didn't make a report that the acquiescence is of such a level that it's inevitable. So in her testimony, Ms. Santos explained that she has relatives who are working for the security, either the police or the military, and that they, as officers, had been told on occasions, if you see something, don't do anything about it. And so that informed her belief that the police would not protect her. Her belief that the police would not protect her was also informed by her neighbor's experience where her neighbor filed a police report and then as a result, the neighbor's son was kidnapped. So Ms. Santos saw that there was corruption at the local level with her neighbor, her neighborhood police department, being unable to protect her neighbor and allowing the neighbor's son to be kidnapped. And also from her experience with her relatives who are in the security forces. And the country conditions evidence also talks about how police departments and the security reporting would put the reporter in more danger than just paying would. The judge is allowed to make predictive findings. That's part of the future focused, what will happen to the petitioner if she returns to her country. And the judge based his findings on her testimony and on the record. The board said, it's just a series of speculations, but the board did not explain why the judge's findings were illogical or implausible. The board didn't say why they didn't think that she would be extorted again. The board did not explain why they didn't think she would not be unable to pay again. And the board did not explain why she would not be again threatened with death, which are the findings that the judge relied on to determine that she would be tortured in the future. And then again, it's a sighting of the regulation, sighting of the standard of review without actually engaging in the standard of review is insufficient. The board says they did clear error review, but they did not actually engage with the judge's facts. They reiterated the judge's facts and then they said it's insufficient without explaining why, because in order to overturn the judge, it has to be illogical or implausible or unsupported and the board did not do that here. Okay. Thank you. Thank you very much. We thank both counsel for their helpful arguments. This case is now submitted. Thank you.
judges: McKEOWN, THOMAS, DESAI